IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF PNY 32 GB Elite Micro SD card and camera, currently located at Tennessee Valley Authority, 1101 Market Street, Chattanooga, Tennessee 37402 | Case No. 1:19-MJ-107 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Kenneth D. Kaminsky, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Lieutenant with the Tennessee Valley Authority Police, and have been since February 2018. During my employment with the Tennessee Valley Authority Police, I have been assigned to investigate numerous crimes against the agency, including thefts of government property. Prior to joining the Tennessee Valley Authority Police, I was a Broward County Florida Deputy Sheriff for twenty-seven years. While with the Broward Sheriff's Office I was a homicide detective for five years and was responsible for investigating death investigations within the jurisdiction of Sheriff's Office and other municipalities. I have experience in all aspects of criminal investigations to include: witness and suspect interviews, sworn statements, preservation and presentation of physical evidence, covert and tactical operations, and presentation of cases for

prosecution. While conducting homicide investigations, I have seized cameras, cellular telephones, and computers for furtherance of the criminal investigation. I have over twenty-nine years of total law enforcement experience. I have a bachelor's degree in Professional Studies and have completed the prescribed courses of academy training for State of Florida Law Enforcement Officers as well as the Federal Law Enforcement Training Center (FLETC).

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4. The first item to be searched is a PNY 32 GB Elite Micro SD card, on the back of the card are numbers and letters Y32G142 D7D4100751. The second item is a black camera, described as having red letters around the lens stating "Full HD 1920 x1080 MEGA Pixels." On top of the camera are two black buttons, one is labeled "MODE" in white letters, the second is labeled "ON/OFF" in white letters. On the side of the camera is a port labeled with white letters "TF," another port labeled USB in white letters and a button labeled with a white letter "R." The bottom of the camera has a partial white and blue sticky substance. Hereinafter, the SD card and the camera shall be referred to as the "Devices." The Devices are currently located at Tennessee Valley Authority Office Complex located at 1101 Market Street, Chattanooga, Tennessee 37402 in a locked evidence vault. I did not personally place the items in the evidence vault. One of my colleagues did. However, I have observed the items in the vault and know where they are located. I will be the person retrieving the items from the vault. After they are retrieved, I will relinquish control of them, through an appropriate chain of custody, to a forensic examiner for review.

5. The applied-for warrant seeks authorization for the forensic examination of the Devices for the purpose of identifying electronically stored data more particularly described in Attachment B.

**PROBABLE CAUSE**

6. On May 21, 2019, TVA Police were notified that a woman who was a contract employee was a victim of being covertly and secretly video recorded while using the female bathroom in the machinist shop on the Tennessee Valley Authority Muscle Shoals Reservation in the State of Alabama. I will reveal to the Magistrate Judge the name of the victim, but after consultation with Assistant United States Attorneys, I would prefer not to make the name of the victim public. The facts would show that the victim removed her clothing to take a shower; this incident was captured on the video recording which had been hidden near the shower. The applicable federal crime is found at Title 18, U.S.C. §1801, Video voyeurism. That statute provides "(a) Whoever, in the special maritime and territorial jurisdiction of the United States, has the intent to capture an image of a private area of an individual without their consent, and knowingly does so under circumstances in which the individual has a reasonable expectation of privacy, shall be fined under this title or imprisoned not more than one year, or both."

7. On May 23, 2019, at approximately 12:00 p.m., I, along with Captain Karen McCormick, met with the victim and her attorney at the Muscle Shoals Power Services Shops. The victim is an employee who works for an outside contract company and is assigned to TVA at the field machinist shop. I, along with Captain McCormick, interviewed the victim.

3

8. The victim stated that Chris Morris is her foreman and Lance Woods is her supervisor at the Machinist Shop. She works there on a daily basis. She has been assigned to the Field Machinist shop since 2016 and the majority of her work is on site at the shop and a portion in the field.

9. The victim described her relationship with Lance Woods for the past three years as problematic: she stated that Woods has spoken to and touched her inappropriately. The victim stated this behavior began approximately six months after she began to work for him.

10. The victim described an example of inappropriate touching by being "slapped on the butt" by Woods and him rubbing her shoulders on multiple occasions.

11. The victim described an example of inappropriate statements made to her by Woods: one time the victim was wearing pants that had drawstrings; Woods stated that she should not wear pants like that because it made him want to "look in places."

12. The victim stated that on Monday, April 29, 2019 between 3:30 and 4:00 p.m. she was in the female bathroom at the machinist shop preparing to take a shower when she saw something in the corner of her eye. The victim looked closer and discovered it to be a camera covertly hidden in the air conditioning vent. The victim was concerned that someone may have been watching and she did not want them to notice that she immediately discovered the camera. The victim stated that she was nude at the time. She put a towel around her and continued her routine to a degree.

13. The victim then recovered the camera and placed it in her purse. She described the camera as sitting on putty and attached with a screw. When the victim walked out of the bathroom

4

she observed Woods walking into the men's bathroom that is adjacent to the women's bathroom. While the victim was walking in the large bay of the machinist shop she observed a short time later Woods walk out of the women's bathroom.

14. When leaving for the day at the turnstiles, Woods told the victim that he forgot something at the shop and therefore he returned to the shop without her. The victim did not tell Woods that she discovered the camera.

15. The victim stated that at approximately 5:30 p.m. that evening Woods texted the victim and wrote she needed to call him and they needed to talk. The victim did not respond back to him. The victim stated that she does not have this particular text.

16. The victim stated that on Tuesday, April 30, 2019, at around lunch time, Woods drove up in his assigned TVA truck to the scrap material yard, within the complex and near the machinist shop, where she was cleaning and stated to her they "need to talk." Woods asked to speak with her in the truck. The victim at first told him "no" and he remained in the area. Woods continued that he needed to talk to her and that it would only be a minute. The victim then agreed and entered the truck. The victim stated that Woods told her that he "put the camera in there" and she then exited the truck and walked towards the shop. He continued to follow her and repeatedly asked her to get back in the truck and she declined.

17. The victim stated that after work and while at home she reviewed the contents of the camera using her own computer. The victim stated that on her review of the micro SD Card that the first video clip of showed Woods "putting the camera up." And the second video clip showed the victim undressing in preparation for a shower. The victim stated that she could not

5

see his face, but the victim stated that she can clearly tell it was Woods. She described him wearing a TVA badge, a shirt, and she worked with him for three years and knew him by his body type.

18. The victim stated on Thursday, May 2, 2019, Woods spoke to her about the camera. Woods asked the victim if she would forgive him, if they would be able to work together and what he could do to fix it. The victim stated this conversation occurred outside the machinist shop at the picnic table. The victim stated she told Woods that she would not forgive him.

19. The victim stated on Friday morning, May 3, 2019, between 6:00 a.m. and 7:00 a.m. at the machinist shop the victim asked Woods "why he did it" and at first Woods said he "did not know." The victim continued asking questions and told him that she is "not that way." The victim stated that Wood's told her that he "imagined her in every way he could" and that he just "wanted to see."

20. The victim, through her attorney, turned over a small black camera and Micro SD card that she stated is the one she recovered from the female bathroom that captured her nude.

21. On May 23, 2019, at approximately 2:10 p.m. I and another investigator met with Lance Woods at the Office Service Warehouse Annex conference room on Muscle Shoals Reservation. Woods was free to leave at any time and was not detained.

22. During our interview Woods confessed that he purchased a camera on his own "a while back"; he stated he did not know from where he purchased it. He stated he purchased it for hunting. Woods stated that he brought the camera to his work site and kept it on his desk for a time. Woods stated that he removed the air conditioner vent cover in the women's bathroom and placed the camera on the ledge.

23. I asked Woods about his intent for taking the video. I asked him if he planned on distributing the footage or was it for his own personal use. Woods stated he did this to see the victim nude and it was for his own personal arousal.

24. Woods stated that he never has done this before and this was the first time. Woods stated that no one else knows that he did this. Woods continued that he met with the victim following the placement of the camera discovery, the next day at the rock pile, and apologized for what he had done. Woods asked me if he should get a lawyer. I told him that was his decision and not mine.

25. At approximately 3:00 p.m. on May 23, 2019, I read Woods his Constitutional Miranda Rights from the prepared TVA Police form. Woods stated that he wanted a lawyer at which time all questioning of him concerning this incident ceased.

26. The Devices are currently in the lawful possession of the Tennessee Valley Authority Police. It came into the Tennessee Valley Authority's Police possession in the following way: The victim, through her attorney, turned over a small black camera and Micro SD card that she stated is the one she recovered from the female bathroom that captured her. Therefore, while the Tennessee Valley Authority Police might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

27. The Devices are currently in storage at the Tennessee Valley Authority Office Complex located at 1101 Market Street, Chattanooga, Tn 37402 in a locked evidence vault. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in the same state as they were when the

Devices first came into the possession of the Tennessee Valley Authority Police. The lawyer, Stephen Couch, representing the victim stated that the Devices were reviewed by his expert while he had possession.

## TECHNICAL TERMS

28. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

29. Based on my training, knowledge and experience, I know that the Devices have capabilities that allow them to serve as video and/or still photography. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices and other evidence of crimes.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

8

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual

9

information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

33. *Manner of execution.* Because this warrant seeks only permission to examine a Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

34.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items and information described in Attachment B.

Respectfully submitted,

Lt. Kenneth D. Kaminsky
Tennessee Valley Authority Police

Subscribed and sworn to before me
on July 1, 2019:

CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A

1.  The property to be searched is a PNY 32 GB Elite Micro SD card, on the back of the card are numbers and letters Y32G142 D7D4100751, as well as a black camera. The camera can be described as having red letters around the lens stating "Full HD 1920 x1080 MEGA Pixels." On top of the camera are two black buttons, one is labeled "MODE" in white letters, the second is labeled "ON/OFF" in white letters. On the side of the camera is a port labeled with white letters "TF," another port labeled USB in white letters and a button labeled with a white letter "R." The bottom of the camera has a partial white and blue sticky substance. Hereinafter, the SD card and the camera shall be referred to as the "Devices." The Devices are currently located at Tennessee Valley Authority Office Complex located at 1101 Market Street, Chattanooga, Tennessee 37402 in a locked evidence vault.

## ATTACHMENT B

1. All records/digital data on the Devices described in Attachment A that relate to violations of and involve Title 18, U.S.C. §1801, video voyeurism, Lance Woods since April 29, 2019, including:

    a. Any and all digital records that capture or otherwise relate to video and or photography.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.